IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHANIQUA ROWLETT, § | |
| *Plaintiff*, § | |
| § | Civil Action No. 4:24-cv-02849 |
| vs. § | |
| § | JURY TRIAL DEMANDED |
| FABCORP, INC. AND HIPPO HOPPER, LLC, § | |
| *Defendants*. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Shaniqua Rowlett now files this Complaint against Defendants Fabcorp, Inc. and Hippo Hopper, LLC. In support, Plaintiff states as follows:

### PARTIES

1. Plaintiff Shaniqua Rowlett ("Rowlett" or "Plaintiff") is a citizen of the United States and a current resident of Tomball, Texas.

2. Defendant Fabcorp, Inc. ("Fabcorp") is an entity authorized to transact business in the state of Texas. It may be served with process through its registered agent, Marianne Hohman, 6951 West Little York, Houston, Texas 77040, or as may otherwise be permitted under Rule 4 of the Federal Rules of Civil Procedure and/or the Texas long-arm statute.

3. Defendant Hippo Hopper, LLC ("Hippo Hopper") is an entity authorized to transact business in the state of Texas. It may be served with process through its registered agent, James B. Morris III, 6951 West Little York, Houston, Texas 77040, or as may otherwise be permitted under Rule 4 of the Federal Rules of Civil Procedure and/or the Texas long-arm statute.

4. Fabcorp is an employer within the definition of Title VII of the Civil Rights Act of 1964, as amended.

5. Hippo Hopper is an employer within the definition of Title VII of the Civil Rights Act of 1964, as amended.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the claims described in this Complaint pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law.

7. This Court has personal jurisdiction over Defendants because they have continuously and systematically performed a substantial amount of business within the state of Texas and, moreover, are being sued herein for illegal conduct against Plaintiff that occurred within the state of Texas. Accordingly, this Court has both general and specific jurisdiction over Defendants.

8. Venue is proper in the United States District Court for the Southern District of Texas pursuant to 42 U.S.C. § 2000e-5(f)(3) because all or part of the unlawful employment practices committed by Defendants occurred in this district.

## FACTS

9. Rowlett began her employment at Defendants as a welder in June of 2022 making $16.00 per hour.

10. Rowlett is Black/African American female.

11. Rowlett is openly a lesbian and therefore a member of the LGBTQ+ community.

12. Rowlett had the necessary certifications and met the requirements to be a welder at Defendants. Therefore, Plaintiff was qualified for her position at Defendants.

13. During her employment at Defendants, Rowlett worked with primarily Mexican/Hispanic males and was the only Black, female lesbian working there as a welder.

14. Upon information and belief, Rowlett was paid disproportionately less than other

equal or lesser qualified male welders at Defendants.

15. During her employment at Defendants, the group of Hispanic male employees she primarily worked with referred to Rowlett as "La Jota" or simply "jota".

16. The term "jota" is a derogatory Spanish slur meaning "dike" or "faggot".

17. Almost every Hispanic male employee that worked with Rowlett at Defendants would call her a "jota" on a daily basis, particularly three Hispanic male employees named Jose Mayorga (nicknamed "Miagi"), Odilon Covarrubeus, and Sergio (whose last name is unknown).

18. On February 15, 2023, Rowlett discovered a crude drawing near her workstation made by an unknown male employee that depicted Rowlett with her breasts exposed and a noose around her neck. The drawing is pictured below:



19. Rowlett immediately reported the crude drawing she discovered on February 15, 2023, to her immediate supervisor, JaJuan Allison, in the presence of the plant manager, Barry Woods.

20. On February 16, 2023, the day after Rowlett made the complaint to her immediate supervisor, a male employee related to Mr. Allison named Alex (whose last name is believed to be "Albro" or another spelling variation) shouted "troublemaker" at Rowlett in front of a large group of employees while she was driving past him on a forklift.

21. After a week had passed and Rowlett had not been given any update or explanation of what Defendants did after she reported the drawing to Mr. Allison, Rowlett made another complaint about the drawing to Yessica Lopez in Defendants' human resources on February 21, 2023. Yessica Lopez responded to Rowlett's email that same day and stated that she had not been made aware of the complaint, despite the fact that Rowlett reported it to her supervisor at Defendants. Thereafter, Mr. Allison admitted to Rowlett that he "dropped the ball" on handling her complaint.

22. In response to Rowlett's complaint about the drawing, Lopez ultimately told Rowlett that she did not know how to help her. However, Defendants did spread the news that Rowlett had complained of unlawful harassment.

23. On March 4, 2023, when Rowlett and many of the Hispanic male employees who harassed her were gathered in the plant manager's office for a forklift certification meeting, they began joking about Rowlett's harassment complaints. Specifically, a male employee named Alex began joking with another male named Jesus Lopez that he was "blank sexual" and therefore was being harassed because of where they were sitting in the meeting. This humiliated Rowlett, and she reported it to the plant manager, Barry Woods, since reporting discrimination to her immediate

supervisor was futile.

24. On March 10, 2023, after Rowlett had complained of harassment, one of the Hispanic male employees that harassed Rowlett the most named Odilon Covarrubeus was driving recklessly on a forklift and intentionally almost struck Rowlett twice as he was driving by her. Both Jajuan Allison and Barry Woods witnessed this forklift incident.

25. These acts by Odilon Covarrubeus on the forklift were clearly to intimidate Rowlett and could have caused her serious bodily harm or even death. Despite this, Jajuan Allison and Barry Woods did nothing in response.

26. That same day, on March 10, 2023, at or around 2:33 PM, Rowlett observed Odilon Covarrubeus standing by the time punch cards as if he were waiting on Rowlett, and she observed him write down information about her that he obtained from her time punch card, like he was going to use the information to harm Rowlett. Some of the Hispanic male employees even followed Rowlett to the parking lot and would shout at her in their vehicles as they were driving off to intimidate and further harass her. This made Rowlett fear for her safety.

27. On March 17, 2023, Rowlett filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWC).

28. On April 13, 2023, a group of Hispanic male employees, including one named Silvano, approached Rowlett and shouted "marica" while they were speaking Spanish and pointing at her to intentionally exclude her from the conversation and harass her with a different slur other than "jota".

29. The term "marica" is another derogatory Spanish slur used to refer to someone as a "faggot" or "dike".

30. Rowlett immediately reported this incident and the "marica" comment to Yessica Lopez in human resources on April 13, 2023, at Defendants.

31. In addition to being called a "jota" and a "marica," Rowlett was also called a "mayate" by the group of Hispanic male employees at Defendants.

32. The term "mayate" is another Spanish slur that is used interchangeably to mean "nigger" and/or "faggot"; this derogatory term usually refers to a Black/African American homosexual man, as the literal translation of the word is used for a type of black beetle.

33. After Rowlett complained to Defendants that the Hispanic male employees around her kept referring to her as a "jota" the group of Hispanic male employees began frequently calling her "mayate". For example, a Hispanic male employee named Silvano approached Rowlett with a group of Hispanic male employees and began teasing her in a fake nice manner while calling her "mayate," (pretending it meant something nice). This further humiliated Rowlett, and she reported it to no avail.

34. On June 30, 2023, Rowlett attended a meeting at Defendant surrounded by the 13-14 of the Hispanic male employees that continuously harassed her, where Defendants did a haphazard presentation about harassment, and the male speaker briefly and vaguely spoke about harassment in the workplace while smirking. Of course, the employees were laughing and pointing at Rowlett as the presenter was talking about harassment because it was obvious that the meeting was about Rowlett. Yet, no one present took the presentation or Rowlett's previous complaints seriously.

35. Rowlett was constantly treated poorly, but the poor treatment and harassment increased after she brought the discrimination and harassment to Defendants' attention. As an example, after the time Rowlett filed her EEOC Charge on March 7, 2023, Rowlett was further

6

excluded from conversations at Defendants, including information about leaving work early on Fridays between 2:00 PM and 4:30 PM. Therefore, on Fridays at random times between 2:00 PM and 4:00 PM, Defendants would suddenly turn off all the lights where Rowlett was working so she would be left alone working in the dark and forced to leave in a dangerous setting where she could fall and hurt herself.

36. As another example of Defendants' poor treatment of Rowlett after she complained of discrimination and harassment, one of Defendants' employees named Katie would gossip about Rowlett and would randomly walk by Rowlett and shout, "You got nothing!" Additionally, this employee named Katie would frequently bring her dog to work with her, and on or around June 23, 2023, Katie's dog began barking at Rowlett in the Defendants' parking lot, and Katie made the petty comment, "I know, right?" as if she were talking to her dog about Rowlett.

37. As another example of Defendants' poor treatment of Rowlett after she complained of discrimination and harassment, on or about July 11 or July 12, 2023, one of the Hispanic male employees that frequently harassed Rowlett named Silvano, walked by Rowlett, stopped, and kissed both of his biceps and flexed in front of Defendants' surveillance cameras to taunt and intimidate Rowlett in a sexist, "machisimo" manner.

38. On July 24, 2023, Rowlett was constructively discharged from Defendants; after daily bullying, harassment, intimidation, and lack of action by Defendants, despite making multiple complaints and even filing an EEOC Charge, Rowlett submitted her resignation and explained that she could not take the abuse any longer.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

39. On March 17, 2023, Plaintiff timely filed a charge of discrimination with the EEOC and the TWC.

7

40. On July 27, 2023, Plaintiff timely filed an amended charge of discrimination with the EEOC and the TWC.

41. The EEOC issued Plaintiff a right to sue letter on or about May 21, 2024.

42. This lawsuit has been filed within 90 days of the EEOC's issuance of that Notice. Consequently, this lawsuit has been filed within 90 days of Plaintiff's receipt of that Notice.

43. Based on the foregoing, Plaintiff has exhausted all administrative remedies required by Title VII of the Civil Rights Act of 1964 ("Title VII") and the Equal Pay Act ("EPA").

**FIRST CAUSE OF ACTION**
*(Sex and sexual orientation discrimination based on hostile work environment)*
*Title VII*

44. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

45. As a female and a lesbian, Plaintiff is a member of a protected class under Title VII.

46. Plaintiff was subjected to unwelcomed harassment based on her sex and sexual orientation at Defendants.

47. The harassment Plaintiff suffered related to her sex and sexual orientation, as described above, was so severe or pervasive that it altered the conditions of Plaintiff's employment.

48. Plaintiff put Defendants on notice of the unwelcomed sexual harassment that she suffered.

49. Defendants failed to take reasonable measures to deter or prohibit the unlawful harassment suffered by Plaintiff.

50. Such conduct violates Title VII.

51. Plaintiff has been damaged by the discrimination against her.

52. Defendants acted with malice and/or reckless disregard for Plaintiff's statutorily-

protected rights.  An award of exemplary damages is therefore warranted.

## SECOND CAUSE OF ACTION
*(Race discrimination based on hostile work environment)*
*Title VII, TCHRA, and 42 USC § 1981*

53. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

54. Plaintiff is a member of a protected class under Title VII, the TCHRA, and 42 USC § 1981 because she is Black/African American.

55. Plaintiff was subjected to unwelcomed harassment based on her race at Defendants.

56. The harassment Plaintiff suffered related to her race, as described above, was so severe or pervasive that it altered the conditions of Plaintiff's employment.

57. Plaintiff put Defendants on notice of the unwelcomed racial harassment that she suffered.

58. Defendants failed to take reasonable measures to deter or prohibit the unlawful harassment suffered by Plaintiff.

59. Such conduct violates Title VII, the TCHRA, and 42 USC § 1981.

60. Plaintiff has been damaged by the discrimination against her.

61. Defendants acted with malice and/or reckless disregard for Plaintiff's statutorily-protected rights.  An award of exemplary damages is therefore warranted.

## THIRD CAUSE OF ACTION
*(Sex and sexual orientation discrimination based on disparate treatment)*
*Title VII*

62. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

63. The level of harassment and poor treatment described above not only humiliated Plaintiff, but it escalated so intensely that she began to feel unsafe and that she would be subject to physical bodily harm.

64. Defendants' treatment of Plaintiff and the level of harassment described above made her working conditions so intolerable that she was forced to resign on July 24, 2023.

65. Plaintiff suffered an adverse employment action when the harassment and poor treatment at Defendants rose to a level that resulted in her being constructively discharged from Defendant.

66. Pleading in the alternative, Plaintiff was constructively discharged because of her sexual orientation.

67. Pleading in the alternative, or at the very least, Plaintiff's sexual orientation was a motivating factor in her termination.

68. Plaintiff has been damaged by the discrimination against her.

69. Defendants acted with malice and/or reckless disregard for Plaintiff's statutorily-protected rights. An award of exemplary damages is therefore warranted.

### FOURTH CAUSE OF ACTION
*(Race discrimination based on disparate treatment)*
*Title VII, TCHRA, and 42 USC § 1981*

70. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

71. Pleading in the alternative, Plaintiff was constructively discharged because of her race.

72. Pleading in the alternative, or at the very least, Plaintiff's race was a motivating factor in her termination.

### FIFTH CAUSE OF ACTION
*(Retaliation)*
*Title VII, TCHRA, and 42 USC § 1981*

73. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

74. Plaintiff engaged in protected activity under Title VII, the TCHRA, and 42 USC §

1981 when she complained of the unlawful harassment and when she filed an EEOC Charge.

75. Defendants took materially adverse employment actions against Plaintiff through the increased harassment, threatening conduct, and ultimate constructive discharge.

76. Had Plaintiff not engaged in protected activity by opposing unlawful employment practices (or what she reasonably believed to be unlawful employment practices) Defendants would not have taken materially adverse employment actions against her.

77. Had Plaintiff not engaged in protected activity by opposing unlawful employment practices (or what she reasonably believed to be unlawful) Defendants would not have constructively discharged her.

78. Such conduct violates Title VII, the TCHRA, and 42 USC § 1981.

79. Plaintiff has been damaged by the retaliation against her.

80. Defendants acted with malice and/or reckless disregard for Plaintiff's statutorily-protected rights.  An award of exemplary damages is therefore warranted.

## SIXTH CAUSE OF ACTION
*(Wage discrimination and Unequal Pay)*
*Title VII and EPA*

81. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

82. As a female, Plaintiff is a member of a protected class under Title VII and the Equal Pay Act.

83. Upon information and belief, Plaintiff was paid less than other male welders who were equal or lesser qualified during her employment at Defendants.

## ATTORNEY'S FEES

84. If Plaintiff prevails, she is entitled to an award of reasonable and necessary attorney's fees.

## JURY DEMAND

85. Plaintiff hereby demands a trial by jury on all claims that may be tried to a jury.

## PRAYER FOR RELIEF

Plaintiff hereby prays that Defendants be cited to appear and that, upon trial, the Court enter a judgment in her favor for the following:

a) Back pay;
b) Compensatory damages;
c) Emotional distress and mental anguish damages;
d) Punitive damages;
e) Reinstatement and/or front pay;
f) Taxable court costs;
g) Exemplary damages;
h) Attorney's fees; and
i) Such other and further relief to which she may show herself entitled.

Respectfully submitted,

THROCKMORTON LAW FIRM PLLC

By: */s/Connor Throckmorton*
Connor Throckmorton
Texas State Bar No. 24103965
Federal ID No. 3065092
5718 Westheimer Road, Suite 1000
Houston, Texas 77057
Telephone:	(713) 400-6173
Facsimile:	(713) 583-8380
Email:	connor@throckmortonlaw.com

***ATTORNEY FOR PLAINTIFF***